September 21, 1992

CLERK OF COURT
SUPREME COURT. CNMI
FILED

92 SEP 21 A8: 4⁶

BY: _____

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

CECILIA L. ROSARIO, ) APPEAL NOS. 91-019, 91-021
 Plaintiff/Appellee/ ) & 91-022 (Consolidated)
 Cross Appellant, ) CIVIL ACTION NO. 90-290
 )
 vs. )
 )
SYDNEY G. QUAN & PRISCILLA )
T. QUAN, )
 Defendants/Appellants/ )
 Cross Appellees, )
 )
 and ) OPINION
 )
DOO YOUNG JANG, )
 Defendant/Appellee/ )
 Cross Appellant, )
 )
 and )
 )
JOAQUIN M. MANGLONA, )
 Defendant/Appellee/ )
 Cross Appellee. )
_____)

Argued June 30, 1992

Counsel for Plaintiff/Appellee/
 Cross Appellant Cecilia L.
 Rosario: Joe Hill
 Hill & Sawhney
 P. O. Box 917
 Saipan, MP 96950

Counsel for Defendants/Appellants/
 Cross Appellees Sydney G. Quan &

Priscilla T. Quan: Antonio M. Atalig
 Demapan and Atalig
 P. O. Box 1638
 Saipan, MP 96950

Counsel for Defendant/Appellee/
 Cross Appellant Doo Young Jang: Timothy H. Bellas
 P. O. Box 2845
 Saipan, MP 96950

Counsel for Defendant/Appellee/
 Cross Appellee Joaquin M.
 Manglona: John A. Manglona
 White, Novo-Gradac
 and Manglona
 P. O. Box 222 CHRB
 Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

BORJA, Justice:

These three appeals have been consolidated.

Cecilia L. Rosario (hereafter Rosario) filed a quiet title action to Lot 015 F 01, containing an area of 1000 square meters, located in Chalan Laulau (hereafter sometimes the lot), against Sidney G. Quan and Priscilla T. Quan (hereafter Quans), Doo Young Jang (hereafter Jang), Joaquin M. Manglona (hereafter Manglona), and others.

The case involves several different transactions involving the same piece of property. The Quans, Jang, and Manglona claimed adverse interests to the same piece of property. We will state the facts in chronological order. Then we will address each of the

claims made by each claimant.[1]

## FACTS

Rosario started to live on Lot 015 F 01 since at least 1971. Rosario does not recall a more specific date when she started occupying the lot other than she was there already in 1971 when she married. The lot was public land. The government has since conveyed the property to her. She still lives on the property.

On April 30, 1986, a "Temporary Lease Agreement" was executed by Sidney G. Quan (hereafter Sidney) and Rosario. This document was recorded on May 2, 1986. No payments were made by Sidney pursuant to this agreement.

On May 6, 1986, Rosario received a homestead permit to the lot from MPLC.

On May 12, 1986, Rosario executed a warranty deed on the lot in favor of Priscilla T. Quan (hereafter Priscilla).

On June 26, 1989, Rosario received a Quitclaim Deed from the

---

[1] On June 29, 1992, Rosario and Manglona filed a "Settlement Agreement" with the Court where the two agreed as follows:

 a. Rosario agrees to release and pay over the sum of Two Hundred Fifteen Thousand Dollars ($215,000.00) plus 50 % of interest now on deposit at Union Bank in Savings Account No. 0272-503157. The remaining 50% of interest shall be paid over to Rosario.

 b. Manglona agrees that all claims, demands, rights, and causes of action that Manglona has against Rosario with respect to the above-described dispute and property are satisfied, discharged, and settled.

 c. Rosario agrees that all claims and demands that she has or may have against Manglona with respect to the above-described dispute and property are satisfied, discharged, and settled.

 d. Manglona and Rosario agree to release, rescind and cancel the Option to Lease dated February 29, 1989 and Lease Agreement dated July 29, 1989.

Counsel for the other parties to the appeal did not file any objection to the Settlement Agreement. The Settlement Agreement was signed both by Rosario, Manglona, and their counsel.

The Court will address the appeal as if Manglona was never a party to the appeal. Without Manglona, Jang is the prevailing party and now becomes only an appellee with regard to the appeals filed by the Quans and Rosario.

273

Marianas Public Land Corporation (hereafter MPLC) conveying the lot to her.

On August 31, 1989, Rosario executed an agreement to lease the lot to Jang. This was recorded on September 1, 1989.

On October 12, 1989, the warranty deed from Rosario to Priscilla was recorded.

Rosario filed a quiet title action on March 19, 1990. Named defendants were Sidney G. Quan, Priscilla T. Quan, Lee Young Shin, Trinity Ventures, Inc., Lewie Adams, Doo Young Jang and Joaquin M. Manglona. Lee Young Shin was dismissed from the lawsuit because he was never served with the summons and complaint. Trinity Ventures, Inc. and Lewie Adams defaulted.

Sidney and Priscilla are husband and wife. Sidney is not a person of NMI descent. Priscilla is a person of Northern Marianas descent.

## THE TRIAL COURT DECISION

The trial court issued its decision by separating and deciding each of the three claims.

With regard to the claim of the Quans, the trial court held that both the temporary lease agreement and the warranty deed were invalid. The court ordered that the Quans be reimbursed the sum of $2,650.

The trial court concluded that the lease agreement between Manglona and Rosario was still valid. Manglona had to pay the

balance due under his lease agreement with Rosario within 30 days from the date of judgment into an interest-bearing account. If Manglona failed to do so, the lease would have no force and effect. If an appeal is filed, the funds would remain in the interest-bearing account until disposition of the appeal.

The trial court further held that if Manglona did not perfect his leasehold interest by paying the balance of the lease payment, then Jang would be entitled to specific performance on his agreement to lease with Rosario. The term would commence upon "the entry of a final adjudication in this matter and the extinguishment of Manglona's interest. . . . " Memorandum Decision at 10.

If Manglona perfects his interest, Jang will not be entitled to specific performance of his agreement to lease. However, he will be entitled to the return of $24,000, plus interest. In addition, he will be entitled to reasonable attorney's fees.

## ANALYSIS

Because of the Settlement Agreement between Rosario and Manglona, made after these appeals were filed, we shall proceed as if Manglona did not perfect his leasehold interest pursuant to the trial court's decision. The trial court's decision will now read that Jang is entitled to specific performance. Jang is not entitled to the return of $24,000, plus interest. Neither is he entitled to reasonable attorney's fees.

For the reasons stated herein, we affirm the decision of the

trial court.

## ■ The Quans' Appeal[2]

### Issues Presented

The Quans state the issues as follows:

1. Did the Temporary Lease Agreement provide constructive notice to third parties?

2. Does the doctrine of merger apply where the lease was executed by an agent of Lessee and subsequently, a deed was executed in the name of the lessee-grantee?

3. Does the doctrine of after-acquired title apply?

4. Was the execution and recordation of the lease enforceable under the doctrine of after-acquired title?

■ The standard of review for all the above issues is de novo because they involve either questions of law, Borja v. Rangamar, No. 89-009, (N.M.I. Sept. 17, 1990), or mixed questions of law and fact, Guerrero v. Guerrero, No. 90-018 (Mar. 18, 1991).

### A. The Temporary Lease

We agree with the trial court that the temporary lease agreement was canceled, rescinded and replaced by the warranty deed. Rosario received no payments under the temporary lease and possession was not delivered to Sidney. Such acts show a clear intent between Rosario and Sidney that they agreed to cancel the

---

[2]We note that counsel for the Quans failed to file an excerpt of record as required under Rule 30, R.App.Proc. We note that this is the third time that Attorney Antonio M. Atalig has been cautioned by this Court to follow the rules of appellate procedure. Mr. Atalig shall be ordered to show cause why he should not be sanctioned for failing to follow the rules of appellate procedure.

temporary lease. We will not disturb the findings of the trial court. They were not clearly erroneous. Its conclusion that the temporary lease has no validity is not in error.

## The Constructive Notice Issue

Rosario had no equitable interest in the lot when she executed the temporary lease agreement. She signed the temporary lease agreement on April 30, 1986, and the Quans recorded it on May 2, 1986. She received a homestead permit on May 12, 1986. Receipt of a homestead permit does not give the homesteader any vested equitable interest in the property. Rosario, as a homesteader, may have had a contingent equitable interest. However, this contingent equitable interest is not transferable. See Castro v. Commonwealth, 2 CR 270 (CTC 1985) (a transferable equitable interest in homestead land arises when a certificate of compliance is issued, or is warranted). Since Rosario had not acquired a certificate of compliance or title to the lot at the time she executed the temporary lease, its recordation cannot provide constructive notice to a subsequent lessee who leases the lot after Rosario acquired a certificate of compliance.

## The Lease and After-Acquired Title Issue

We agree with the Quans that the doctrine of after-acquired title may be applied to a leasehold situation. However, such a doctrine is not applicable to the facts in this case. When Rosario obtained title from MPLC on June 26, 1989, the temporary lease no longer existed. As noted above, the execution of the warranty deed

277

on May 12, 1986, by Rosario to Priscilla rescinded the temporary lease.

## B. The Warranty Deed

We agree with the trial court that the warranty deed is invalid.

## The Merger Issue

The Quans' merger theory that the lease between Rosario and Sidney merged with the warranty deed from Rosario to Priscilla does not have merit. Sidney and Priscilla are two different persons. The mere fact that they are husband and wife, without more, does not make the merger doctrine applicable.

The merger doctrine states that "when a greater and lesser estate meet in the same person, the lesser is merged or 'drowned' in the greater." See 28 Am.Jur.2d Estates § 374 (1966). The Quans argue that the temporary lease in favor of Sidney merged with the subsequent warranty deed in favor of Priscilla. There are two additional reasons why this argument fails.

First, even if the warranty deed to Priscilla, the greater estate, was valid, it could not have merged with the temporary lease, the lesser estate, because there was no existing lesser estate to merge with.

Second, the warranty deed to Priscilla violated Article XI, Section 5(a) of the NMI Constitution. Article XI prohibits a freehold transfer of a homestead for 10 years from the issuance of a quitclaim deed from MPLC. Here, we have a freehold transfer to

278

Priscilla even before the issuance of a quitclaim deed from MPLC to Rosario. A merger cannot be possible because there is no greater estate that can be merged with the lesser estate, the leasehold interest, even if still in existence. The greater estate does not exist because it is invalid as violative of Article XI of the NMI Constitution.

### The After-Acquired Title Issue

 We agree with the general principal of law enunciated by the Quans on after-acquired title.

> A grantor who executes a deed purporting to convey land to which he has no title or to which he has a defective title at the time of the conveyance will not be permitted, when he afterward acquires a good title to the land, to claim in opposition to his deed as against the grantee or any person claiming title under him.

23 Am.Jur.2d Deeds § 341 (1983). However, this doctrine does not apply to the facts in this case.

 The warranty deed from Rosario to Priscilla was not recorded until after Rosario executed an agreement to lease the lot to Jang. The agreement to lease was recorded prior to the recordation of the warranty deed from Rosario. In addition, the warranty deed from Rosario to Priscilla was constitutionally defective. The doctrine can have no applicability when to do so would violate a constitutional provision.

The Quans' argument on the applicability of the Homestead Waiver Act is without merit. First, they do not state in their

279

brief how it applies. Second, the deed from MPLC to Rosario specifically states that the conveyance is subject to Article XI.

## The Rosario Appeal

### Issues Presented

1. Whether the trial court abused its discretion in determining that Rosario must repay certain amounts to the Quans.

2. Whether the trial court committed reversible error in determining that Jang has an enforceable lease.

Rosario seeks attorney's fees from Jang under paragraph 8(c) of the agreement to lease and section 22 of the lease agreement. In addition, he seeks attorney's fees under this Court's inherent power to award fees in matters showing bad faith or frivolous claims or defenses.

The first issue is subject to the abuse of discretion standard of review. Hemlani v. Villagomez, 1 CR 203, 208 (D.NMI App.Div. Oct. 19, 1981).

The second issue involves a legal question and is reviewed de novo. Borja v. Rangamar, supra.

I. The Quans' transaction

Rosario argues that it was an abuse of discretion for the trial court to order that Rosario reimburse the Quans $2,650. She supports her argument with the trial court's conclusions that the Quans were overreaching, and there was a failure of consideration. The trial court, pursuant to its equity power, stated that "the Quans will be reimbursed the sum of $2,650 for payments made

280

for the invalid warranty deed." Memorandum Decision at 7. A trial court's use of its equity power will be reviewed under the abuse of discretion standard. Sinclair v. Sinclair, 718 P.2d 396 (Utah 1986).

While we may differ with the trial court's decision to reimburse the Quans the sum of $2,650, we do not think that the order was an abuse of discretion. See Hamlani v. Villagomez, supra, ("We will not interfere with the trial judge's discretion, unless clearly abused, to fashion a remedy where equity is involved."). We will not reverse the order.

II. The Jang Transaction.

Rosario argues that Jang has an exclusive legal remedy under the agreement to lease, i.e., the return of the $24,000 paid by Jang to Rosario. Jang, therefore, cannot seek specific performance. We disagree.

Clearly, the equitable remedy of specific performance is always available in matters dealing with contracts for the sale of real property. See Restatement (Second) of Contracts § 360 comment e (1981). However, such a remedy is not always available in matters dealing with an agreement to lease since terms may not be certain. See 71 Am.Jur.2d Specific Performance § 147 (1973).

However, where an agreement to lease was validly entered into and the terms of the lease agreement that will be entered into are definite and certain, the agreement to lease will be specifically enforced. See Annotation, "Specific Performance--Lease Contract,"

281

73 A.L.R. 1163 § 2 (1948).

█In this case, the agreement to lease attached a copy of the proposed lease agreement that would be entered into later. The proposed lease agreement was definite and certain in its terms. As such, Jang could seek specific performance. It was not an abuse of discretion for the trial court to grant such a remedy.

Rosario seeks attorney's fees from Jang under paragraph 8(c) of the agreement to lease and under section 11 of the lease. We deny both requests. Attorney's fees are allowed under both provisions if Rosario is a prevailing party. She is not.

Rosario further seeks attorney's fees from Jang under this Court's inherent authority in matters showing bad faith or frivolous claims or defenses. We deny this request. Rosario has failed to show how Jang acted in bad faith in this appeal, or how Jang's claims or defenses were frivolous.

## CONCLUSION

The judgment of the trial court is **AFFIRMED** as to all parties except Joaquin M. Manglona. The matter, however, is **REMANDED** to the trial court to amend its judgment and memorandum decision in light of the Settlement Agreement executed by Manglona and Rosario on June 26, 1992.

It is hereby **ORDERED** that Antonio M. Atalig shall show cause why he should not be sanctioned by this Court for his failure to follow this Court's rules of appellate procedure. This Court

282

proposes a sanction of $1,000 to be paid to the Court. Mr. Atalig

shall file his response within 30 days of this opinion.

_____
Jose S. Dela Cruz
Chief Justice

_____
Ramon G. Villagomez
Justice

_____
Jesus C. Borja
Justice